

RIGGS ⓡ ABNEY

NEAL TURPEN ORBISON LEWIS

May 15, 2017

Wells Fargo Home Mortgage
Attn: Home Retention
1560 Broadway, Suite 2090
Denver, CO 80202

**In the Matter of:**
Dennis Obduskey

**Property Address:**
132 Wagon Tongue Rd
Bailey, CO 80421

**Account Number**

---

## R.E.S.P.A. QUALIFIED WRITTEN REQUEST

Dear Sir or Madam:

Please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e).

Please note that you have received QWR's from Dennis Obduskey in past years, some of these items below are new, and others have gone unanswered. Please treat each of these items accordingly, as new requests.

Specifically, we are disputing a) the identity of the true secured lender/creditor, b) the existence of debt, and c) your authority and capacity to collect on behalf of the alleged lender/creditor.

These issues have arisen to the surface repeatedly and are based on the purported conflicting information that has been received from your office regarding ownership. The documents that have been provided contain fraud in this arena; we require proof of the chain of secured ownership from the original alleged lender/creditor to the alleged current lender/creditor. Further, we require proof that you are the entity that has been contracted to work on behalf of the alleged lender/creditor. The sequence of ownership is problematic and we have attached documentation that states MERS assigned ownership to Wells Fargo as of May 31, 2007, but according to the documents that took place in a May 3, 2011 assignment filed with the county clerk, however other correspondence in 2011 is claims Wells Fargo only as a servicer.

- Please note that your organization has claimed in different correspondence to this law firm to be the owner of the note and deed of trust in multiple foreclosure actions, yet

---

50 South Steele Street, Suite 600, Denver, Colorado 80209-2811 / Telephone (303) 298-7392 / Facsimile (303) 298-1319

EXHIBIT 1

5.      Full name, address, and telephone number of the Custodian of my original Promissory Note, including the name, address and telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641 (0(2) of the Truth In Lending Act.

6.      Full name, address, and telephone number of the Custodian of my original Security Instrument, including the name, address and telephone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641 of the Truth In Lending Act.

7.      A physical location (address) of the original promissory note, original security instrument, and all assignments of the security instrument, and a contact name and phone number of someone who can arrange for inspection of said documents.

8.      Full name, address and telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers or special servicers for this account.

9.      The electronic MERS number assigned to this account if this is a MERS Designated Account, including documentation related to the time it was in custody in MERS.

10.     Proof of true sale of the note from alleged Lender to investors, by showing: Wire transfer document(s), and/or Signed purchase and sale agreement(s), Bank statements or similar documentation.

**11.     The MERS Milestone Report, if the note number and security instrument was tracked by Mortgage Electronic Registration Systems. I want to see the audit trail of the alleged transfer in ownership and alleged transfer in security interest. This includes from the day a MIN number was assigned until the day it was removed from MERS and became inactive.**

12.     A complete and itemized statement from the date of the loan to the date of your response to this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, or other similar fees or expenses related in any way to this loan.

13.     A statement/provision under the security instrument and/or note that authorizes charging any such fee against the account.

14.     Copies of all property inspection reports and appraisals, broker price opinions, and associated bills, invoices, and checks or wire transfers in payment thereof after 2007.

15.     Complete statement of any fees received by your organization from government or other agencies in connection with modification applications.

16.     Complete and itemized statement of any fees incurred to modify, extend, or amend the loan this would include attorney fees or to defer any payment or payments due under the terms of the loan, from the date of the note origination to the date of your response to this letter.

EXHIBIT 1

May 15, 2017
Page 5 of 5

FHFA Office of Inspector General
Attn: Office of Investigation – Hotline
400 7th St, SW
Washington, DC 20024

Timothy Mayopoulos, CEO
Federal National Mortgage Association
3900 Wisconsin Avenue NW
Washington, DC 20016-2892

EXHIBIT 1

678873   5/11/2011 3:10 PM   Debra A Green
1 of 1   ASDOT R$11.00 D$0.00   Park County Clerk

## ASSIGNMENT OF DEED OF TRUST

Assignor:   Mortgage Electronic Registration Systems, Inc., as nominee for First Magnus Financial Corporation, An Arizona Corporation, its successors and assigns

Assignee:   Wells Fargo Bank, NA

Date of Deed of Trust:   May 31, 2007

Recording Date:   June 12, 2007

County of Recording:   Park

Recorded:   At Reception No. 641460

KNOW ALL MEN BY THESE PRESENTS that on, May 31, 2007, Dennis K. Obduskey, an unmarried person, did grant, bargain, sell and convey the property described in the Deed of Trust to the Public Trustee of the County in which said Deed of Trust was recorded, which property was to be held in trust, by such Public Trustee for the use and benefit of Assignor, to secure the payment of the original principal sum of $329,940.00, together with interest.

NOW THEREFORE, in consideration of the sum of ten dollars and other valuable consideration, paid to the Assignor, the receipt, adequacy and sufficiency of which is hereby acknowledged, Assignor hereby assigns unto the said Assignee, the said Deed of Trust, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all powers and of all the covenants and provisos therein contained, and said Assignor hereby grants and conveys unto the said Assignee, all of Assignor's beneficial right, title and interest, under the Deed of Trust, in and to the following described property, situated in the County of Park, State of Colorado, to wit:

LOT 108, DEER CREEK VALLEY RANCHOS-UNIT 4, COUNTY OF PARK, STATE OF COLORADO.

also known by street and number as: 132 Wagon Tongue Road, Bailey, CO 80421

TO HAVE AND TO HOLD the said Deed of Trust, and also the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.

IN WITNESS WHEREOF, the Assignor has executed this assignment the day and year first above written

Mortgage Electronic Registration Systems Inc.

Tah Mohammed
Assistant Secretary

STATE OF MINNESOTA}
                    } ss.
COUNTY OF DAKOTA   }

The foregoing instrument was acknowledged before me on _MAY 3_ 2011 by _TAT' mohammed_ as Assistant Secretary of Mortgage Electronic Registration Systems, Inc.

Witness my hand and seal.
My Commission Expires:   _1-31-2015_

(SEAL)

Notary Public

Return to:
Conner Ross re: 09-13646R
Castle Stawiarski, LLC
999 18th St., Ste. 2201
Denver, CO 80202
MERS MIN#: 100039224726799465
MERS Phone #: 1-888-679-MERS (6377)

SANDRA MAE PARRISH
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

16-1330 – OBDUSKEY
BRIEF – EXHIBIT 2

EXHIBIT 1

MERS® Servicer Identification System - Results

 **Process Loans, Not Paperwork**™

www.mers-servicerid.org

**1 record matched your search:**

MIN: 1000392-2472679940-5    Note Date: 05/31/2007    MIN Status: Active ?

Servicer:    Wells Fargo Home Mortgage a Division of Wells Fargo    Phone: (651) 605-3711
Bank NA
            Minneapolis, MN

Investor: This investor has chosen not to display their information. For
assistance, please contact the servicer.

Return to Search

For more information about MERS please go to www.mersinc.org

12/27/10

EXHIBIT 1

MERS® Servicer Identification System - Investor                                    Page I of I

Select borrower type and enter borrower information to see Investor for MIN 1000392-2472679940-5.

◯ Investor for Individual Borrower

Your entries may be either upper or lower case.
Fields marked are required.
\* Last Name: Obduskey

\* SSN:              .      . 8786

\* _ i By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.
\*
[ Submit ]

Investor for Corporation/Non-Person Entity Borrower

Your entries may be either upper or lower case.
Fields marked are required.
\* Corporation/Non-Person Entity Name:

\* Taxpayer Identification Number:

\* _ i By checking this box, the borrower or borrower's authorized representative is attesting to the fact that he or she is in fact the borrower or borrower's authorized representative for the loan in question. Additionally, borrowers wishing to learn the identity of their loan's investor must confirm their identity by entering their last name or corporation name as well as their SSN or TIN. If this information does not match the information contained in the MERS® System for the borrower of the loan, the investor information will not be displayed. Borrowers should verify the results with their loan servicer.
\*
[ Submit ]

Servicer:  Wells Fargo Home Mortgage a Division of Wells Fargo        Phone: (651) 605-3711
Bank NA

          Minneapolis, MN

Investor:  Federal Home Loan Mortgage Corporation


Close Window

EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1 Dennis K. Obduskey

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Main District of Colorado

Case number 16-17141-JGR

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment. A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571. Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Official Form 410
## Proof of Claim

04/16

**Part 1:   Identify the Claim**

**1. Who is the current creditor?**   Wells Fargo Bank, N.A.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**   ☒ No   ☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Wells Fargo Bank, N.A.
Default Document Processing
N9286-01Y

Name
1000 Blue Gentian Road

Number   Street
Eagan MN 55121-7700

City   State   ZIP Code
Contact phone   800-274-7025

Contact email   FOCNOTIFICATIONS@WELLSFARGO.COM

Where should payments to the creditor be sent? (if different)

Wells Fargo Bank, N.A.
Attention: Payment Processing
MAC# X2302-04C

Name
1 Home Campus

Number   Street
Des Moines IA 50328

City   State   ZIP Code
Contact phone   800-274-7025

Contact email   FOCNOTIFICATIONS@WELLSFARGO.COM

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
W E C M G E 1 0 1 7 1 4 1 C O M 8 7 8 5 7 8 4 3

EXHIBIT 1

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. Check all that apply: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8) | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5) | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ |

* Amounts are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b). | Check the appropriate box: |
|---|---|
| | ☒ I am the creditor. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☐ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/03/2016
                   MM / DD / YYYY

/S/ Tykia Janee' Martin

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Tykia Janee' Martin | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Vice President Loan Documentation | | |
| Company | Wells Fargo Bank, N.A. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | | | |
| | Number    Street | | |
| | City | State | ZIP Code |
| Contact phone | | | |
| Email | | | |

EXHIBIT 1



Wells Fargo
PO Box 16335
Des Moines, IA 50306-0335

July 13, 2017

Steven L. Hill, Esquire
Riggs, Abeny, Neal, Turpen, Orbison, & Lewis
50 South Steele Street, Suite 600
Denver, CO 80209-2811

Subject: Resolution to your inquiry about account number⸱ ⸱ ⸱ for Dennis K. Obduskey

Dear Steven L. Hill, Esquire:

Addressing our customer's concerns is important to us and I thank you for the opportunity to assist you. I'm responding on behalf of Wells Fargo Home Mortgage to the inquiry received in our office on May 16, 2017, which we've discussed via phone.

## Current status of the loan

On July 19, 2016, our customer filed for Chapter 13 bankruptcy protection.

Our customer's account isn't currently in review for payment assistance options. We previously reviewed the account and were unable to approve it for assistance. Our customer's account is due for the March 01, 2010, through July 01, 2017, payments. Our customer's account has an escrow advance balance of $24,742.07 for payments we've made toward their property taxes and homeowner's insurance.

This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the account, Wells Fargo Home Mortgage is not attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. This is not a bill or a request for payment from the customer(s).

## Account history

In response to your inquiry, we've enclosed an account history for this loan.

## Loan validation

This loan originated with First Magnus Financial Corporation. We've included copies of the Note and Deed of Trust for further details. These documents validate the origination of this loan.

## Ownership/investor information

In your inquiry you requested information concerning the ownership of the loan. Please note that the assignment recorded in 2011 only assigned the servicing of the loan to Wells Fargo Bank, N.A., and did not transfer ownership. We are still the servicer of the loan which has always been owned by Freddie Mac. A contact address for the owner/assignee is:



WITHOUT RECOURSE,
PAY TO THE ORDER OF     Wells Fargo Bank, N.A.

FIRST MAGNUS FINANCIAL CORPORATION
An Arizona Corporation
By
Christopher Trujillo   Post Closer

WITHOUT RECOURSE
PAY TO THE ORDER OF
VOID
Wells Fargo Bank, N.A.

By Lori K. Vanagunas
Lori K. Vanagunas
Vice President Loan Documentation

EXHIBIT 1



Wells Fargo
PO Box 10335
Des Moines, IA 50306-0335

May 26, 2017

Steven L. Hill, Esquire
Riggs, Abeny, Neal, Turpen, Orbison, & Lewis
50 South Steele Street, Suite 600
Denver, CO 80209-2811

Subject: Update to your inquiry about account number            ; for Dennis K. Obduskey

Dear Steven L. Hill, Esquire:

We're providing investor information about our customer's account that was requested in your inquiry received in our office on May 16, 2017.

We appreciate your patience and understanding as we complete our research for the remaining item(s) of your inquiry.

**Investor information**

Wells Fargo Bank, N.A. is the servicer of the loan for owner/assignee Freddie Mac. A contact address for the owner/assignee is:

Freddie Mac
8200 Jones Branch Drive
McLean, VA 22102
Phone: 1-800-373-3343

**Going forward**

Thank you for waiting while we finalize our research. We appreciate the time and effort taken to contact us. If you have any questions while our work is in progress, I'm here to help. You may reach me directly at 1-800-853-8516, extension 1335621622. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

Kevin Hurley
Executive Resolution Specialist
Customer Care and Recovery Group

CC:   Jane M. Roberson
      720 South Colorado Boulevard, Suite 630-S
      Denver, CO 80246

PLEASE NOTE: This notice is being provided for informational purposes only. As a result of at least one bankruptcy case filing that included the above referenced account, Wells Fargo Home Mortgage is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S).

EX003/YHG/co2130251/ge6968430/cl708

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801





Wells Fargo
PO Box 10335
Des Moines, IA 50306-0335

July 13, 2017

Steven L. Hill, Esquire
Riggs, Abeny, Neal, Turpen, Orbison, & Lewis
50 South Steele Street, Suite 600
Denver, CO 80209-2811

Subject: Resolution to your inquiry about account number             for Dennis K. Obduskey

Dear Steven L. Hill, Esquire:

Addressing our customer's concerns is important to us and I thank you for the opportunity to
assist you. I'm responding on behalf of Wells Fargo Home Mortgage to the inquiry received in
our office on May 16, 2017, which we've discussed via phone.

## Current status of the loan

On July 19, 2016, our customer filed for Chapter 13 bankruptcy protection.

Our customer's account isn't currently in review for payment assistance options. We previously
reviewed the account and were unable to approve it for assistance. Our customer's account is
due for the March 01, 2010, through July 01, 2017, payments. Our customer's account has an
escrow advance balance of $24,742.07 for payments we've made toward their property taxes and
homeowner's insurance.

This notice is being provided for informational purposes only. As a result of at least one
bankruptcy case filing that included the account, Wells Fargo Home Mortgage is not attempting
in any way to violate any provision of the United States Bankruptcy Code or to collect a debt
(deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or
has received a discharge, where the account was not otherwise reaffirmed or excepted from
discharge. This is not a bill or a request for payment from the customer(s).

## Account history

In response to your inquiry, we've enclosed an account history for this loan.

## Loan validation

This loan originated with First Magnus Financial Corporation. We've included copies of the Note
and Deed of Trust for further details. These documents validate the origination of this loan.

## Ownership/investor information

In your inquiry you requested information concerning the ownership of the loan. Please note
that the assignment recorded in 2011 only assigned the servicing of the loan to Wells Fargo
Bank, N.A., and did not transfer ownership. We are still the servicer of the loan which has
always been owned by Freddie Mac. A contact address for the owner/assignee is:

**WELLS FARGO HOME MORTGAGE**

## Customer Account Activity Statement
### Loan
### Obduskey

| Date Received | Effective Date | Due Date | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied / Disbursed | Unapplied Funds | Fees Assessed or Recovered | Corporate Advance Fees Assessed or Recovered | Principal Balance | Escrow Balance | Unapplied Balance | Outstanding Fee Balance | Outstanding Corporate Advance Fee Balance | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/03/14 | | | | | | | | | | $326,000.00 | -$14,328.60 | $1,699.48 | $2,723.84 | $4,594.20 | Beginning Transactions |
| 07/11/14 | | | | | -$2,283.00 | | | | | $326,000.00 | -$16,611.86 | $1,699.48 | $2,723.84 | $4,594.20 | Hazard Insurance Disbursement |
| 07/11/14 | | | | | 766.00 | | | | | $326,000.00 | $15,841.85 | $1,699.48 | $2,723.84 | $5,304.20 | Attorney Advance Disbursement |
| 08/11/14 | | | | | $12.53 | | | | | $325,000.00 | -$16,641.89 | $1,699.48 | $2,723.84 | $3,567.70 | Statutory Expense Disbursement |
| 08/12/14 | | | | | -$416.00 | | | | | $325,000.00 | $16,641.89 | $1,699.48 | $2,723.84 | $3,192.70 | Attorney Advance Disbursement |
| 08/22/14 | | | | | -$500.00 | | | | | $325,000.00 | -$16,061.99 | $1,699.48 | $2,723.84 | $0,182.70 | Statutory Expense Disbursement |
| 08/07/14 | | | | | $264.00 | | | | | $325,000.00 | $16,541.89 | $1,699.48 | $2,723.84 | $6,284.20 | Statutory Expense Disbursement |
| 08/12/14 | | | | | -$495.00 | | | | | $326,000.00 | -$16,541.89 | $1,699.48 | $2,723.84 | $6,624.20 | Statutory Expense Disbursement |
| 09/05/14 | | | | | $22.00 | | | | | $326,000.00 | -$16,541.89 | $1,699.48 | $2,723.84 | $7,100.00 | Statutory Expense Disbursement |
| 09/05/14 | | | | | $26.76 | | | | | $326,000.00 | -$16,541.89 | $1,899.48 | $2,723.84 | $61,120.44 | Corporate Advance Adjustment |
| 10/06/14 | | | | | -$650.00 | | | | | $291,000.00 | $16,541.89 | $1,699.48 | $2,748.84 | $7,975.44 | Attorney Advance Disbursement |
| 10/02/14 | | | | | $15.00 | | | | | $295,000.00 | $16,641.89 | $1,699.48 | $2,723.84 | $7,979.44 | Corporate Advance Adjustment |
| 10/01/15 | | | $762.70 | | | | | | | $255,000.00 | -$17,404.59 | $1,695.48 | $2,723.84 | $7,979.44 | County Tax Disbursement |
| 08/06/15 | | | -$762.10 | | | | | | | $255,000.00 | -$16,207.79 | $1,699.48 | $2,375.44 | $7,979.44 | County Tax Disbursement |
| 08/06/2015 | | | -$869.00 | | | | | | | $254,000.00 | $16,207.79 | $1,699.48 | $2,725.54 | $8,472.44 | Attorney Advance Disbursement |
| 07/09/15 | | | -$1115.00 | | | | | | | $254,000.00 | -$16,207.79 | $1,699.48 | $2,725.54 | $8,510.44 | Statutory Expense Disbursement |
| 09/09/15 | | | | | -$2,574.00 | | | | | $255,000.00 | -$290,711.20 | $1,699.48 | $2,705.54 | $8,991.64 | Hazard Insurance Disbursement |
| 09/03/15 | | | $100.00 | | | | | | | $255,000.00 | -$290,711.20 | $1,699.48 | $2,745.44 | $8,491.64 | Corporate Advance Adjustment |
| 09/03/15 | | | -$60.00 | | | | | | | $290,000.00 | -$290,711.20 | $1,839.48 | $2,095.84 | $8,555.44 | Statutory Expense Disbursement |
| 10/06/15 | | | $80.00 | | | | | | | $290,000.00 | $290,711.20 | $1,620.48 | $2,720.44 | $8,496.44 | Corporate Advance Adjustment |
| 10/08/15 | | | -$864.72 | | | | | | | $290,000.00 | -$290,711.20 | $1,620.48 | $2,726.44 | $8,965.16 | Statutory Expense Disbursement |
| 10/28/15 | | | -$65.00 | | | | | | | $290,000.00 | -$290,711.20 | $1,599.48 | $2,263.84 | $8,920.19 | Statutory Expense Disbursement |
| 12/07/15 | | | -$242.00 | | | | | | | $290,000.00 | -$290,711.20 | $1,599.48 | $2,726.94 | $9,175.19 | Statutory Expense Disbursement |
| 12/7/15 | | | $65.00 | | | | | | | $290,000.00 | -$290,711.20 | $1,619.99 | $2,726.84 | $9,240.19 | Corporate Advance Disbursement |
| 01/07/16 | | | -$299.41 | | | | | | | $290,000.00 | -$290,711.20 | $1,619.99 | $2,726.84 | $8,448.60 | Statutory Expense Disbursement |
| 01/07/16 | | | $120.00 | | | | | | | $290,000.00 | -$290,711.20 | $3,899.48 | $2,729.84 | $9,355.62 | Corporate Advance Adjustment |
| 02/03/16 | | | | | | | | | | $290,000.00 | -$291,076.20 | $1,599.48 | $2,775.84 | $9,355.62 | County Tax Disbursement |
| 03/25/16 | | | -$13.00 | | | | | | | $290,000.00 | -$291,075.20 | $1,699.48 | $2,775.84 | $9,342.12 | Statutory Expense Disbursement |

This Customer Account Activity Statement is more fully prepared outside of the regular course of business to provide a streamlined form of this loan payment history. It is not a record kept by Wells Fargo in the course of regularly conducted business.

EXHIBIT 3

Customer Account Activity Statement
Dennis K Obduskey

| Date Received | Contractual Due Date | Post Due Date | Pre Due Date | Debtor Funds Received | Trustee Funds Received | Escrow Interest | Amount Applied to Principal | Amount Applied to Interest | Escrow Applied (Disbursed) | Fees Assessed or Recovered | Principal Balance | Escrow Balance | Proof of Claim Balance | Outstanding Fee Balance | Corporate Advance Fees Assessed or Recovered* | Outstanding Corporate Advance Balance* | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | $329,000.00 | -$22,168.29 | $0.00 | $2,725.14 | | $5,389.62 | Beginning Total Balances |
| 07/19/16 | | | | | | | | | | | $329,000.00 | -$27,165.59 | $190,544.80 | $2,725.14 | | $5,370.62 | Chapter 13 Filed, Case Number 16-17141** |
| 07/19/16 | | | | | $1,699.48 | | | | | | $329,000.00 | -$22,165.56 | $194,845.32 | $2,725.14 | | $9,389.62 | Unapplied Funds Reflected in Claim |
| 07/25/16 | | | | | | | | | -$2,891.00 | | $329,000.00 | -$25,157.28 | $194,845.32 | $2,725.14 | | $5,389.62 | Homeowners Insurance Paid |
| 07/28/16 | | | | | | | | | -$2,891.00 | | $329,000.00 | -$28,148.28 | $194,845.32 | $2,725.14 | | $5,389.62 | Homeowners Insurance Paid |
| 07/29/16 | | | | | | | | | $2,591.00 | | $329,000.00 | -$25,157.28 | $194,845.32 | $2,725.14 | | $5,389.62 | Insurance Refund |
| 08/01/16 | | | | | | | | | | $40.80 | $329,000.00 | -$25,157.25 | $194,845.32 | $2,885.84 | | $5,380.62 | Adjustment |
| 08/01/16 | | | | | | | | | | | $329,000.00 | -$25,157.28 | $194,845.32 | $2,885.84 | $95.00 | $5,304.62 | Adjustment |
| 08/10/16 | | | | $2,097.45 | | | | | | | $329,000.00 | -$25,157.28 | $194,845.32 | $2,885.84 | | $5,304.62 | Unapplied Funds |
| 09/30/16 | 05/01/16 | 09/01/16 | | $1,921.37 | | | | $1,850.83 | $185.82 | | $329,000.00 | -$24,970.45 | $194,845.32 | $2,845.84 | | $9,304.62 | Short Payment Received, Unapplied Funds Used to Complete Payment |
| 10/02/16 | 07/01/16 | 09/01/16 | | $1,921.92 | | | | $1,850.83 | $186.82 | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | | $9,904.62 | Short Payment Received, Unapplied Funds Used to Complete Payment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $9,299.62 | Adjustment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $60.00 | $9,239.62 | Adjustment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $400.00 | $8,839.62 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $20.00 | $8,819.62 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $217.50 | $8,582.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $20.00 | $8,562.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $8,557.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $15.00 | $8,542.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $8,537.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $8,532.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $8,527.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $70.00 | $8,307.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $335.00 | $8,372.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $20.00 | $8,352.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $8,347.12 | Adjustment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $8,342.12 | Adjustment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $215.00 | $8,127.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $8,122.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $510.00 | $7,612.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $340.00 | $7,272.12 | Adjustment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $230.00 | $7,042.12 | Adjustment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $75.00 | $6,967.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $20.00 | $6,947.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $6,542.12 | Adjustment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $5.00 | $6,537.12 | Adjustment |
| 11/09/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $60.00 | $6,877.12 | Adjustment |
| 11/08/16 | | | | | | | | | | | $329,000.00 | -$24,783.64 | $194,845.32 | $2,685.84 | $72.00 | $6,807.12 | Adjustment |

This Customer Account Activity Statement has been prepared for general information purposes only and is intended to provide a summary of available facts of the information concerning the account. [illegible] the information on this statement is accurate. The statement is a record kept by Wells Fargo in the course of regularly conducted business.

MMP = Monthly Mortgage Payment

EXHIBIT 3

# INTEREST-ONLY PERIOD FIXED RATE NOTE

MIN 100038724726789456
MERS Phone: 1-888-679-6377

LOAN NO :

| MAY 31, 2007 | WESTMINSTER | COLORADO |
|---|---|---|
| [Date] | [City] | [State] |

132 MASON TONGUE ROAD, BAILEY, CO 80421
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   329,840.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   8.750   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first   120   months, and then will consist of principal and interest.

I will make my monthly payment on the   1st   day of each month beginning on   JULY, 2007   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on   JUNE 01, 2037   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
603 NORTH WILMOT ROAD TUCSON, AZ 85711   or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   1,856.91   for the first   120   months of this Note, and thereafter will be in the amount of U.S. $   2,606.75   . The Note Holder will notify me prior to the date of change in monthly payment.

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT     Form 3271 1/01 (rev. 8/00)
V-638N ×000
Page 1 of 2
LENDER SUPPORT SYSTEMS INC. 638NR.NEW (11/06)

EXHIBIT 3

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
DENNIS K. CHOLUSKY                -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                           -Borrower

[Sign Original Only]

V-#-36N PAGES                    Page 3 of 3                    Form 3271 1/01 (rev. 9/06)

EXHIBIT 3

6454ea          8 15 2007 11 46 AM          Debra A Green
1 of 15    D-T  RS76 Fee 136.00            Park County Clerk

Return To:
FIRST MAGNUS FINANCIAL CORPORATION

603 N. WILMOT            **RECEIVED**
TUCSON, AZ 85711
                         JUN 28 2007
Prepared By:
FIRST MAGNUS FINANCIAL CORPORATION
603 N. WILMOT
TUCSON, AZ 85711

——————————— [Space Above This Line For Recording Data] ———————————

LOAN NO.: 2472879840          **DEED OF TRUST**         MIN 100038224728769406
ESCROW NO.: 22452                                        MERS Phone: 1-888-679-6377

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          MAY 31, 2007
together with all Riders to this document.
(B) "Borrower" is
DENNIS K ORDUSKEY AN UNMARRIED PERSON

Borrower is the trustor under this Security Instrument.
(C) "Lender" is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

Lender is a CORPORATION
organized and existing under the laws of   ARIZONA

COLORADO Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3006 1/01
V-6A(CO) (0005).01                     Page 1 of 15          ERROR SUPPORT SYSTEMS, INC. MERS6ACO 8000 800/000

EXHIBIT 3

645369        6/12/2007 11:45 AM        Debra A Green
3 of 15        DF/T  R$76.00  D$0.00        Park County Clerk

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

        COUNTY                        of                        PARK
   [Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]

LOT 108, DEER CREEK VALLEY RANCHOS - UNIT 4, COUNTY OF PARK, STATE OF COLORADO.

Parcel ID Number: 16298                                                which currently has the address of
                              752 WAGON TONGUE ROAD
                              BAILEY                                    [Street]
                                                                       [City], Colorado    80421        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

V-8A(CO) (0000).01                              Page 2 of 15                        Form 3006    1/01

EXHIBIT 3

641-600          6/12/2007 11:46 AM                  Debra A Green
5 of 15    DOT  R576 00 D$0 00                       Park County Clerk

Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless

V-6A(CO) (0005) 01          Page 5 of 15          Form 3006   1/01

EXHIBIT 3

work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

V-6A(CO) (0005).01                    Page 7 of 15                    Form 3008  1/01

G1146n      G-12/2007 11:46 AM      Debra A Green
8 of 18   D'07   R370 hy D$7.00      Pace County Clerk

of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

V-6A(CO) 0005) 01          Page 8 of 15          Form 3006   1/01

EXHIBIT 3

641409            6/12/2007 11:46 AM            Debra A Green
11 of 15  2001  $$96.00 PSO 0:                        Park County Clerk

notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)

V-6A(CO) (0005) 01                        Page 11 of 25                        Form 3006   1/01

EXHIBIT 3

631469    5 12 2007 11 46 AM                    Debra A Green
13 of 15  DOT  RS 76.00 D$0.00                   Park County Clerk

Hazardous Substance or Environmental Law of which Borrower has actual knowledge  (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of the notice to Borrower as provided in Section 15. Trustee shall record a copy of the notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by Applicable Law and shall mail copies of the notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time the purchaser will be entitled to Trustee's deed. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request that Trustee release this Security Instrument and shall produce for Trustee, duly canceled, all notes evidencing debt secured by this Security Instrument. Trustee shall release this Security Instrument without further inquiry or liability. Borrower shall pay any recordation costs and the statutory Trustee's fees.

24. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

V-6A(CO) (0005) 01                    Page 14 of 15                    Form 3006  1/01

EXHIBIT 3

04 4-95        4-12 2007 11:46 AM       Debra A Green
15 of 15 , CO   R876.00 D$0.00          Park County Clerk

STATE OF  COLORADO                    Denver          County ss:

The foregoing Instrument was acknowledged before me this  31st  day of  May     2007
by
DENNIS K  OBDUSKEY

**SUNDIE M. HESSEL**
NOTARY PUBLIC
STATE OF COLORADO

Witness my hand and official seal.

My Commission Expires:

My Commission Expires
01/24/2009

Sundie M. Hessel
Notary Public

V-8A(CO) (0008) 01              Page 15 of 15              Initials _____
Form 3006   1/01

EXHIBIT B

Appellate Case: 16-1330    Document: 01019753001    Date Filed: 01/19/2017    Page: 11

## IV.   STATEMENT OF THE CASE AND FACTS RELEVANT TO THIS APPEAL

### A.   The Facts And Proceedings Before The District Court

In May 2007, Obduskey obtained a loan from Magnus Financial Corporation for $329,940, secured by his property in Bailey, Colorado.   Shortly thereafter, Freddie Mac acquired the loan.  Wells Fargo services the loan on behalf of Freddie Mac.  (Aplee. Supp. App. at 107, 114-16.)

In 2008, Obduskey received an offer to apply for a loan modification.  Wells Fargo sent him the loan modification paperwork in January 2009, but Obduskey did not sign and return the correct paperwork, so Wells Fargo did not modify the loan.  (Aplee. Supp. App. at 42-48.)  Obduskey defaulted on the loan on June 1, 2009.  (Aplee. Supp. App. at 42-48, 107, 114-16, 134-36, 138.)  Wells Fargo then initiated non-judicial foreclosure proceedings pursuant to the Deed of Trust and Colorado Rule of Civil Procedure 120.   (Aplee. Supp. App. at 139.)   In the meantime, Obduskey was approved for successive Home Affordable Modification Program ("HAMP") Loan Trial Periods, although none resulted in permanent modifications.  (Aplee. Supp. App. at 42-48.)  The loan was never modified, and Obduskey never cured his default.  (Aplee. Supp. App. at 107.)

On August 12, 2015, Obduskey filed his complaint in the United States District Court for the District of Colorado, alleging causes of action against both

